Thank you, Your Honor. May it please the Court. I'm Chris Landau, and I'm here today on behalf of the appellant, Avis Budget Group. I'd like to reserve five minutes for rebuttal. Alaska Rent-A-Car launched this lawsuit by bringing a dozen different claims, including antitrust, unfair trade practices, tortuous interference, and breach of contract against Avis Budget. The District Court granted summary judgment for Avis Budget on all claims except for one breach of contract claim. Counsel, let me ask you some particular questions. Absolutely. On the expert witness, I could see some issues. I was particularly interested in the potential problem with using the Juneau Airport as the basis for the analysis because of the differences between whether people are going to rent a car in Juneau and whether they're going to rent a car in Anchorage or Fairbanks or elsewhere. However, it was in one way the best comparison, the cleanest, because of who was there before and who was there after. I was impressed that the district judge did a two-day voir dire to determine whether the Daubert concerns were satisfied. We do review for abuse of discretion on his determination that the Daubert concerns were satisfied. So I don't see why your objections would go to admissibility rather than weight when we measure it against an abuse of discretion standard. Your Honor, you are right about the standard, certainly. And there are two ways to look at the expert issue in this case. One is the admissibility or Daubert standard that Your Honor just referred to, and that is reviewed for abuse of discretion. The other way that we also said in our brief is from a reasonable certainty of lost profits. It is ultimately a sufficiency of the evidence. That was going to be my next concern that I was going to ask you about. Right. Frankly, I would like today to spend more time and really focus on the New York aspect of things. Because you really don't wish to push your Daubert issue beyond what you've done in the briefs. I think that's a fair point, Your Honor. Let me ask you about the reasonable certainty standard in New York. Whenever you're talking about lost future profits as an element of consequential damages for breaching a contract, you're talking about counterfactual history. So it can never be anywhere close to certain. It's like, what if Hitler had never lived? Would Austria have joined Germany? Well, gosh, I don't know. It's counterfactual. In a case like this, it's counterfactual. I don't see why it wasn't certain enough compared to the way damages for future lost profits are usually determined. Your Honor is totally correct that there is an inherent uncertainty in the whole realm of lost profits, specifically future lost profits. But it's precisely for that reason that New York has a heightened standard for that. New York realizes that these kind of things tend to be speculative. And for that reason, New York— The difference between guess, speculation, estimation, and ascertainment. And the best you can really do for future lost profits is estimation. You can't ascertain them with any more certainty. And I don't see why your quarrel wouldn't just go to the weight of the expert evidence here for estimating. Because, Your Honor, New York has made it clear that you can use a model to estimate these only insofar as that model is based on real historical facts. And the model was. It was based on how much business the local Avis franchisee loses when a budget franchisee moves in. But, Your Honor, the model was based even more fundamentally on the notion that, but for this breach, budget would have performed exactly like a completely different company, Alamo National, that filed for bankruptcy at around the same time. So the starting assumption for this whole chain of assumptions, this isn't just that one assumption, Your Honor. The Juneau Airport is one part of the chain. But we're really talking here about a much more attenuated chain. And budget goes, I don't really see why that helps you. Well, because basically they said, okay, Alamo National filed for bankruptcy in 2001. Budget filed for bankruptcy a few months later. They said the starting point for Anderson's analysis was to say, but for this breach, I'm going to assume that budget would have lost as much market share as Alamo National without accounting for any other potential variables, such as the fact that Avis budget revitalized budget through a lot of mechanisms that were perfectly consistent with the contract. You called an expert to counter what their expert said, correct? Yes, Your Honor. And did you counter on these issues? Yes, Your Honor. In fact, our expert, Finch, really focused on saying that Anderson's assumptions were flawed. Just one thing, just going back. But isn't this why we have jury trials? Well, Your Honor. And the jury just didn't buy your position. Two points, Your Honor, I'd say. First, of course, Daubert is the question whether or not it should go to the jury in the first place because an expert comes in with a certain veneer of credibility. But, you know, I accept your point on – Well, I mean, obviously both sides want to keep out what they consider to be prejudicial. But, unfortunately, it's also probative. Well, I understand that. But, again, Daubert keeps out a certain set of things. If the answer to every Daubert question was, well, you could have made your rights known to the jury, then Daubert wouldn't exist. But, again, I understand that Daubert is a threshold standard for admissibility. I think the key cases that I'd really like to invite the Court to focus on are the New York cases from the New York Court of Appeals, the Second Circuit, and even the Tenth Circuit recently had a New York future loss profits case called LifeWise. The Seminole case is the Kenford case from the New York Court of Appeals. And in that case, one of the nice things about New York cases is that they're very short. This is about a two-page case. That case, the New York Court of Appeals says, you know, the plaintiffs in this case have come up with an incredibly elaborate model. And we think this is probably the best model that social science can come up with for future loss profits damages. Nonetheless, it is really based on assumptions, not hard historical data. So, I think what New York is saying... A whole different kind of thing, though, is contemplated 20-year operation of a domed stadium. You just can't have the kind of data that's useful to estimate that, that you can for rent-a-car outfits, which to the customer are somewhat fungible. But again, I think here it's critical, Your Honor, to look into Anderson's assumptions. And again, Anderson didn't say, okay, here's where Alaska rent-a-car was prior to this alleged breach. This is Alaska rent-a-car's historical performance, so we're going along. Then on this day comes the breach, and so here's the post-breach world. That might be the kind of historical data that they could rely on for showing the future loss profits. One point that I think is really critical is they made the decision to seek this particular form of damages, lost profits, that's a disfavored form of damages under New York law. I think there was some discussion in an earlier case today about punitive damages. And, you know, punitive damages don't always arise in every case. Well, lost profits damages don't always arise in every case. And under New York law, there's been a substantive decision made by New York that we're going to make it tough for people to show lost profits damages. We're going to raise the standard. And again, I think if you look at the Second Circuit cases like Schoenfield or the Tenth Circuit case like LifeWise, again, there were a series of assumptions that were being made that really could have been made essentially for a brand-new business. And they say, no, this is the kind of stuff that it just doesn't meet this particular measure of damages. And so what we're really saying today is that, you know, aside from the fact that we don't even think that the Anderson, we think those assumptions are so far-fetched. And again, attributing the Juneau Airport to the entire state of Alaska, you know, and it's fair enough, I think, going to your point, Judge Kleinfeld, say there was some historical evidence from Juneau. So maybe that's fine. You can use Juneau. But then – Much better evidence from Juneau in terms of who was there before and who was there after the breach. I think that's a fair point, Your Honor. But then it seems to me what you've got to do before you then take Juneau and apply it to the state of Alaska as a whole is make some accounting for how Juneau is different. Even they can see that Juneau is a very small market where you had only two or three players. If you're going to use Juneau as some raw data – I thought he did. It struck me that Juneau is a different market. If you're flying into Anchorage on business from outside, you really need to rent a car to get to Midtown or these other places. If you just try to use cabs, you're going to be waiting an awful lot. Juneau, you check into the Baronoff and all your businesses with the state government, it's all within two blocks. So it is different. But on the other hand, it's the only airport he could find where you've got a really good comparison of just how much does the budget pick up when it moves in there. You can have a precise measurement of how much budget picks up. And then you look at the other airports with more players, and you can figure, well, not every customer Avis loses goes to budget. But he did account for that. Your Honor, actually what he did is he said in Juneau when budget entered, Avis lost 40% of its business in Juneau. So he attributed that. He actually then said – this is unexplained in the record – it should be 52% statewide. So basically what Anderson did is he started with a model that kind of almost assumes a zero-sum world, that everything that makes budget go up is 100% attributable to this breach. Oh, so you're arguing now that budget was so attractive that a whole lot of people who used to not rent a car, they just used cabs. Now they rent cars because they can get a budget? Oh, no, Your Honor. I'm sorry if I wasn't clear. What I'm saying is that he took the performance – It was kind of a zero-sum. Well, but what I'm saying, though, is our theory of the case – and obviously the jury doesn't have to believe any particular theory, but just in terms of looking at assumptions – is that to the extent budget goes up, then Avis necessarily goes down. Well, it's possible that because of the revitalization of budget and the use of some of these sales personnel to market them together, the reason why we, Avis, acquired budget in the first place was because of synergies. There certainly are scenarios where you can go out and you can – I'm not saying when budget comes into the market, a whole lot more people rent cars. No, when I threw out that hypo, but now that's what you're saying. I'm sorry. I must have misunderstood you, Your Honor. Certainly there can be a scenario where a rising tide lifts all boats. That's, in a sense, the premise for why you have consolidation in the market. Did our experts say there was such a scenario? Well, our expert really focused, Your Honor, on showing the problems – yes, he did. I mean, our folks really emphasized on pointing out – he and also Mr. Salerno, some of our fact witnesses, explained why it is that we, you know, consolidated. Let me ask about something else before you run – your time's running down, but concern me. The Rule 82 attorney's fees issue. Sure. It looks to me as though it's substantive for Erie purposes. And that's undisputed. Procedural for state choice of law purposes, and it's a very important procedural right for Alaska litigants because it protects them from meritless litigation to a greater extent than the American Rule. Of course, it's controversial. I think you cited an article I had written that criticized the Alaska Law. I didn't even know you'd be on the panel, Your Honor. But it's the law, whether it's controversial or not. Well, with respect, Your Honor, I guess I would agree with everything you said except for the fact that it's an Alaska procedural right for choice of law purposes. The Alaska Supreme Court has not decided that. They rely on the Nunapitcha case. I think they sort of did decide. You can argue that it's dicta. Also, it's in the rules. It comes from Rule 82. It doesn't come from common law or statute. Right, Your Honor. But, again, I think under— Well, Your Honor, again, I think there's two different dimensions. Substance procedure, as I think every law student knows, can be a real kind of thing that makes you pull out your hair when you're learning about Erie and all that stuff. And you have to be very careful of the context for which you are putting— I think they said what your adversary needs and what should stand your case in Nunapitcha. Well, Your Honor, no. Well, with respect, what they said then, they certainly said— It might be dicta, but they said it. Well, no, in Nunapitcha, Your Honor, and I'm glad you've clarified the pronunciation on that name, what they said is that they were looking at a different issue, which is procedural or substantive for purpose of state separation of powers. Under the Alaska Constitution, as you know, the Supreme Court has the power to enact the rules, and the legislature has the power to enact substantive law, the public policy. And so the question was, was Rule 82, for those purposes, which side of the line did it fall on? In Nunapitcha, the Alaska Supreme Court did not cite the restatement second of conflict of laws. They said— They said that in determining whether it's procedural or substantive for purposes of deciding whether the court can make the law on this or whether the legislature has to, it's procedural. Correct, Your Honor, but again, the— Why shouldn't that control— Because if you look at the analysis, Your Honor, with respect, it's a more loosey-goosey approach. It's a different question that they're asking. So the answer, not surprisingly, might be different. They're saying, look, it is closely— Attorney's fees is closely enough connected to the legal system writ large that it makes sense for us to have passed Rule 82 in the first place as part of our power over the legal system. And in fact, they said, but the exceptions are substantive. So it's okay for the legislature to make an exception to Rule 82 without the supermajority that's required to overrule in the judicial sphere. Now, again, that question of the allocation of powers within the state government is really a different question as to whether Alaska would want to have its attorney's fees provision applied, for instance, to this contract dispute that's governed by the laws of New York. In a sense, the application of the Alaska Rule is considered to be avowedly compensatory. And the way this rule winds up working has nothing to do with the conduct of the litigation. Again, that's the restatement of conflict of law standard. And that's the standard that's applicable here. I think both sides agree in our brief that Alaska looks to that restatement for the test. That restatement was not cited in Nunn and Pitchock. Substantive law governs what people do in the course of their conduct outside of litigation.  And this obviously only governs conduct in the course of litigation. It doesn't affect who you rent a car to or something like that. Well, Your Honor, with respect, I think it's not just conduct with respect to the litigation. This is not with respect to the conduct of the litigation. This has to do with the outcome of the litigation, that it has an avowedly compensatory purpose. In a sense, this is no different than saying in Alaska law the prevailing party should get 1.2 times the amount of fees. In fact, it has no bearing on what the party actually spent on litigation. It's a framework that says you get 20 percent, you get 10 percent under certain scenarios. If you want to reserve time, you're down to four minutes. I see. The only thing I'd like to say before I sit down, Your Honor, is I'd also like to point out the summary judgment posture of the case just to make sure this issue doesn't get lost in the shuffle. And in particular, the district court made a determination that we had violated the agency settlement agreement. And in the course of that, the district court said that their acceptance of the agreement after three and a half years was timely as a matter of law. With all respect, the timeliness of an acceptance is a quintessential factual issue for the jury. It certainly matters a lot in some circumstances. For example, if you make an offer on a house, time is probably of the essence. And if the person purports to accept it three, four years later, you bought another house, you moved to another city, something is different. But on this, they accepted some joins subsequent to the Alaska join, and it looked as though Avis wanted all of its franchisees to join if it could get them. It represented at one point to the court that Avis was joined, which I don't think it's a judicial estoppel because they didn't win on that, but it's nevertheless evidence of Avis's understanding of the deal. And the whole point of the class action was to get all franchisees bound by the same rules. Well, Your Honor, again, I think as you just said, it's evidence. They certainly could point to that, but at the same time, we're entitled to say three and a half years. What evidence is there that it was unreasonable in the circumstance? That it's three and a half years, Your Honor. Avis accepted some people more than that. Again, Your Honor, I think this is a perfect jury. People joined later than that, and that was fine. If I could address that specifically, the people that joined later than that, we accepted that in the context of settling disputes with them. So in a sense, that was no harm, no foul, because we settled with those folks. It's one thing to say that because you – we don't have a dispute with them. The difference here is that we didn't settle with these folks, and so there's no principle of law that said if you settle with somebody later that you must necessarily accept from somebody earlier. I see my time is winding down. I'd like to reserve the balance of my time. All right. Thank you. That's fine. Good morning. Good morning. May it please the Court? My name is Susan Arlansky. I represent the plaintiff appellee, Alaska Renicar, which in this litigation we usually call ARAC. ARAC, for decades, enjoyed a mutually supportive, positive relationship with Avis. Is it called ARAC generally? No. It's shorthand for this litigation. It's a shorthand. I couldn't get my arms around it. If you call it Alaska Renicar, it'll be easier. I will try to call it Alaska Renicar. I think that's what the Halcros have always called it. Alaska Renicar, for decades, enjoyed a mutually supportive, positive relationship with Avis, its parent company. And when the interests of the parent company and the local Alaska Renicar were aligned, the parent company's support helped the local franchise compete successfully against budget. Could you lay out what you think the correct theory is on the Rule 82 attorney's fees? I understand, and then it flits away from me, this notion that it's substantive for eerie purposes and procedural for state choice of law purposes. Your Honor, reading between the lines of the questions you asked my colleague, I think Your Honor understands it completely. It is, and there's no dispute among the parties, that it's a substantive issue for eerie purposes, which means we go to the law of the foreign state, including its choice of law provision. So we go to Alaska law and we ask, would Alaska... Why is it substantive for eerie purposes? Because it's not procedural in the way that a federal court litigates. I think the eerie substantive procedure distinction is narrower than the choice of law distinction. I'm probably not the expert on why is it not federal procedural because both sides conceded it, so we didn't have to brief that very much. But while we go to Alaska state law, the question clearly is, is it substantive or procedural? And more specifically, would the Alaska Supreme Court declare it substantive or procedural for purposes of applying Alaska choice of law principles? They haven't really, have they? And they have come really, really close. In the Eret versus de Havilland case, and I think it's a 1985 case, they came right out and said, we would apply Alaska law even if we determined that the substantive law of this litigation were a different state. They then went on to determine that in Eret, Alaska law governed the substance of the dispute. So that line in Eret is technically dicta, but it's very well thought out and considered dicta. It's a line that the Alaska Supreme Court came back to in a case called Firefighters about a decade later in the 1990s when they quoted Eret for saying that attorney's fees under Rule 82 are not an element of damages. And then we get to the Native Village of Nunapichuk case, which I think is awfully close to controlling and answers the question for us because what the Alaska Supreme Court had to do in that case was to determine whether it was substantive or procedural for purposes of its own constitutional authority to promulgate rules. And under the Alaska Constitution, the Alaska Supreme Court has authority to promulgate procedural rules. It doesn't have authority to promulgate substantive rules. So what the Alaska Supreme Court said was Rule 82 is procedural. It does not define rights. It addresses how rights are enforced. It operates regardless of the type of right in issue. Why shouldn't we just read it to regulate what happens in Alaska state courts? For example, if they had a rule that said 10 days to answer a motion and the federal rule were 13 days to answer a motion, the federal rule would apply. Well, that's back to the Eret question, Your Honor. The thing that keeps puzzling me and the reason why I keep understanding it and then not understanding it is it's so substantively important. If you litigate in Alaska, you better not push a meritless case to a conclusion. You better not lose for that matter because the attorney's fees are pretty substantial. That sounds a whole lot like substance. If it's procedure, then it's court procedure. That's the justification for doing it under Rule 82. But if that's so, we've got our own rules. No, I think, Your Honor, I flipped to my brief, and I think the answer of why attorney's fees are substantive and not procedural for the Eret question was given to us by the United States Supreme Court in the Alaska Pipeline Service case in 1975. That's at least what we quote in our brief where we said that the United States Supreme Court at that point said that attorney's fees are a substantive question for Eret purpose. And I think with the Alaska Pipeline case, on the record, that's why both parties said we agree. There's no dispute in this litigation that attorney's fees are substantive for Eret. We go to Alaska state law, and the litigation and the dispute between the parties has turned entirely on how the Alaska Supreme Court would resolve the choice of law question. My concern really doesn't matter because the Supreme Court has settled it. I think so. Rightly or wrongly, they're supreme. Right. And then I think under the Alaska analysis, whether or not, I mean, Avis Budget's brief have cited dozens and dozens of cases from other courts that said attorney's fees might be substantive in other states for other purposes. But again, what they said doesn't matter. What matters is what the Alaska Supreme Court said because we're looking at the Alaska's choice of law analysis. The U.S. Supreme Court says it's substantive for Eret purposes. That means it's up to the Alaska Supreme Court, which says it's procedural. Right. Controls on choice of law purposes. Under the combination of Eret and Native Village, New Napa Check, and I think that that's as close to really clear guidance as we're going to get from the Alaska Supreme Court on that case. Before you go back to other things, I just had a quick question on apparently the parties concede that there was double counting on the $57,739.51. Yes. We think that the trial judge did a really, really good job on all aspects of the case, and we agree that he made a small mathematical mistake, and this court could order him to correct that. Well, can this court just back it out and correct it or subtract that amount, or does it take more than that? It is a simple mathematical issue, and you could just back it out. So that would mean we would just affirm with directions to correct the judgment by that amount that he would have prevailed? Yes. It's a totally mathematical double counting, and if Avis Budget had brought it to our attention in the trial court, we probably would have stipulated to have it backed out. Let me ask you about something else. On the jury strikes, when I read the transcripts of what the jurors said, I thought, well, the judge was absolutely right because the defendant's lawyer jumped from juror number 8 to juror number 15, the other native, and then he peremptorily challenged 15, but 15 didn't say the same thing as 6. He didn't say he thinks people ought to be punished if they breach with no damages. Six said that. Fifteen didn't. Fifteen said it depends, and that was just like two white jurors that the defendant didn't strike. He got all that. And then I read what the judge said, and he didn't say that at all. He gave totally different reasons. He basically said your strike is mistaken rather than your strike was racially motivated. Well, that's not an adequate ground to deny a peremptory strike. What do we do about that? Well, I have two answers. One, I think that I agree that what the judge said at the end of the day was a little more muddled and a little less clear than I would ideally like to have. I thought he said what I just said. I have two answers for you. One, I go back to the earlier part of the judge's statements where he laid out the correct tests under Batson, and I think as an appellate court with all the deference we give to trial court fact finding, I think there's value to assuming that he understood what the law was when he read it and he told the parties what the law was that he was applying, and he gave them the benefit of the doubt when he said something that was not as sharp and as clear as he should have. The other point I would like to make on the Batson issue is that we could probably skip these issues and look at the harmless error analysis. I mean, we have the United States Supreme Court decision in Rivera which says that wrongfully I'm curious about that. It looks to me as though harmless error as long as you let the minority on instead of exercising a perempt against them. Yes. I couldn't figure out what case there could be where the error was not harmless. The only place you could get an error that would not be harmless would be where you would have some extra, I mean, if the other side could show that, I mean, that there had been a, maybe if they could show in retrospect that the person should have been challenged for cause, which Avis Budget has not attempted to do in this case. I mean, if they'd said we tried to challenge him for cause and the judge denied the child. Okay. I think you're right that unless you had some kind of extra, outside the jury selection process, if somebody had some evidence that this particular juror who sat had engaged in some kind of juror misconduct, again, we'd have a reason for thinking. Then you don't need to get to harmless error because you've got juror misconduct. I mean, I think you're right that what the Supreme Court is saying and what the panel of this court said in the Lindsay decision earlier this year is that what the First Circuit said, So what you're saying is that in a civil case, as long as the judge denies a strike of a minority, he can't suffer the need to try the case again because of a Batson reversal. I think what the United States Supreme Court and what the panel of this court said in Lindsay is that, yeah, when you have a fully qualified, fair jury that sat, there's no earthly reason to set aside the verdict because one party had a juror that they wished hadn't sat on the case. It's a qualified, impartial jury. They wish they hadn't sat, but they probably wish that for a half dozen other jurors that sat as well. They just ran out of peremptory challenges before they got there. So I think it's fair to say that the way the law has developed is that erroneously including a native person on the juror is not ever going to be harmless error, but for some of the kinds of facts which might give you error on a whole other basis. So I think that's fair. And I think that we think that the facts that the district judge looked at certainly supported his denying the challenge, even if his articulated reasons weren't as sharp as they should have been. But if you go to harmless error analysis under Rivera and Lindsay, you don't even need to go back and reexamine what the district court did. There are a half dozen other issues in the case. Let me try to answer the one that there were some questions about that Mr. Lando talked about, which is the summary judgment ruling on timeliness. And the point I would make for the court on that issue is that this was not a standard commercial case. There was one more thing that was bothering me, and that was the reasonableness of the model. I kept thinking, well, I kept thinking, I never rent a car when I go to Juneau. I don't go anymore, but I never did. Because you stay at the Baranoff, you can walk everywhere you have to go. And I always want a car in Anchorage or Fairbanks. And my guess is that that's common to all the other people that rent cars in those places, except maybe a few vacationers. They're mostly going to Juneau on business, and it's really a peculiar market because you don't need to rent a car so much. So generalizing from it is very troublesome to Anchorage where you do need a car. The Alamo distinction, I'm not sure of. It's a little fuzzier in my mind which side it helps. But the expert's model was very troubling. Why is it enough under Daubert? Well, I think what I would urge on this court is primarily standard of review and the broad deference that you owe to a district court judge who very thoughtfully applied his gatekeeper function. Well, he did it for two days. He did it for two days. It doesn't mean you did anything quality for two days, but he did it for a long time. He read the written pretrial motions, which articulated some problems with what Avis Budget saw with Alaska Rent-A-Car's expert Patrick Anderson. And the judge wrote in his decision, I'm not sure whether he is, whether Mr. Anderson is or is not considering conduct that is part of the breach or outside the breach, and I'm not sure exactly how he gets to his conclusions. Avis Budget says it's all Ipsy Dixit and pulling the numbers out of the air. The judge said, I've read his report. I'm not sure. I'm reserving ruling, which is exactly what we want a judge to do in that moment. That's exercise of discretion. So we heard Mr. Anderson testify for hours and hours on foundation, and Alaska Rent-A-Car's counsel took him through exactly what facts he looked at, exactly what assumptions he used, where the numbers underlying his assumptions came from. Then they let Avis Budget cross-examine him for hours and hours and hours on those assumptions, and then the judge convened a session where he asked the parties what their arguments were. Was there evidence presented in the trial that would have allowed the jury to find a breach but no damages? If the jury had rejected Patrick Anderson's testimony, sure. And what was the evidence that would have allowed them to reject it? There was cross-examination, but what would be the instruction, and the law and the evidence that they could have cobbled together to come to that conclusion? Well, I mean, the jury heard a lot of testimony. The jury heard a lot of lay witness testimony from the Alaska Rent-A-Car people and their employees, which talked about the ways in which they were harmed. So the jury would have had to disbelieve all of that. Then they heard Patrick Anderson, who quantified that, and the jury would have to disbelieve all of that. What about their expert? Their expert attempted to poke holes at Mr. Anderson's assumptions. Their expert never gave the jury an alternative number. Their expert never gave the jury an analysis. I mean, their lay witnesses said, hey, this was a great thing for the company. Rising tide floats all boats. We don't even know whether Alaska Rent-A-Car is harmed at all. Their expert did not support that with any kind of expert testimony or with any data. At the end of his testimony, when he was asked to clarify what he was saying, he was asked, are you saying there are no damages? And he said, I don't know whether there were any damages. So what was counsel's argument as to why there were no damages? Counsel's argument was that Mr. Anderson's model didn't make a lot of sense to him. So was it basically a burden issue? Yes, I think it was a burden issue. You heard this, but it was impeached, and so therefore it doesn't support the numbers that they're asking for. And I think on appeal that we are solidly in the zone of what a jury is entitled to believe or not believe. The jury was properly instructed on the reasonable certainty standard. I would say that I think that Avis Budget's briefing has exaggerated the demands of that standard. Reasonable certainty is the language of the restatement. It's the language of most jurisdictions. It's not some unique extra super hard-to-meet New York law. So basically, the strength of their argument would be that under New York law and the cases that are cited that the evidence that was presented, even if believed, would not be sufficient to support the jury verdict. Right, and I think at that point in time you have Patrick Anderson's testimony in the record. And when I listened to Mr. Landau talk earlier, he seems to slide back and forth between the Daubert issue and the reasonable certainty issue. The reasonable certainty comes up in a motion for judgment as a matter of law after all the evidence is in. And the district court and this court need to take the evidence in the record in the light most favorable to the prevailing party and ask whether if that evidence was believed, a reasonable jury could have come to the verdict that it did. And when I hear their argument, they sort of say, well, we're under reasonable certainty, but let's ignore what Mr. Anderson said because what Mr. Anderson said wasn't believable. And I don't think they can muddle those two standards that way. I think under the reasonable certainty test, Mr. Anderson's testimony stands and a reasonable jury could have believed it. And as Your Honor points out, Avis Budget didn't give the jury any other number that it could have landed on. I mean, they could have said, we don't like Mr. Anderson's testimony, we think he's exaggerated it, we think that the comparisons to Juneau, you know, Juneau's not a really good model, we don't think that Budget would have had a 50% effect, it would have taken 50% of its growth from Alaska Rent-A-Car, we'll recalculate the numbers and use 25% or something. The jury could have done all sorts of things in the jury room, but they didn't. And so when the district court and this court go back and look at the verdict and ask whether or not this verdict can stand, it's an enormously deferential standard of review that you need to apply. Thank you. Are there any further questions? There are no further questions. All right. Thank you very much. Thank you, Your Honor. If I could make three quick points. Well, you have about a minute and about two minutes. I will try to talk like the guy in the commercial and really fast. You're pretty fast anyway. Okay. I will try to talk even faster than whatever. On the New York lost profits, our point is not that Mr. Anderson is not believable. Our point is, if you look at the New York cases we cited in our brief, they say that models are not enough. Again, the Kenford case says we can't imagine a better model than this, but a model based on someone else's lost profits. So are you saying as a matter of law? Yes, Your Honor. And that's why it's a legal issue for us. When you read Kenford like that, I thought it just meant that in a case like this, this case is a case like in a model that's not enough. Again, it's a model that depends on someone else's business performance. What kind of model is okay? A model that is based on hard historical data. This is what we are in. These are clearly projected lost profits that were understood by the parties. I think there's about five or six cases, the ones that they cite and the ones that we cite about New York lost profits. If you put those side by side on a table, you will see that their cases are all situations where lost profits awards were upheld, where there was a lot of hard historical data that says this is what we were projected to earn. That's not this case. This is a case about assumptions and models that I think fits squarely in the cases that we're citing here. Again, it's a question of that heightened standard of proof. And one thing that counsel said that I agree with is that our point of trial really was a standard of proof issue. Anderson is not enough to meet this heightened standard because they chose to seek lost profits. If I could then quickly turn to the Batson issue. One thing that you said, Judge Kleinfeld, that I wanted to address is that it seemed to you like in the comparative analysis, juror number 15 was in the same boat as some of the earlier ones in saying it depends. The difference, with all respect, is that with respect to prospective jurors 7 and 8, there was time to ask them follow-up questions. No such time was given or allotted for follow-up questions on the peremptories for number 15. Why should it have been? You used up all your time. Well, I understand that. But it just means at the end of the day, they were not similarly situated. It's apples to oranges. Because with respect to the earlier ones, you can't do a comparative analysis because after saying it depends, they said, yes, but we could follow instructions and et cetera, et cetera. Juror number 15 never had that opportunity to do that because the time was out. And they say, well, you were offered more time. The time we were offered was only for the for-cause challenge. We did not have a basis for challenging juror number 15 for cause. So I think it's very important to look carefully at that colloquy as it played itself out. There was no more time. And that's why juror number 15 was in a different place. And the judge, their brief is somewhat misleading on this. It suggests that the judge did this comparative analysis. He did not do so. I think as you pointed out, Judge Kleinfeld, the judge just kind of said, well, I think that juror number 6 can't decide it fairly, but juror number 15 can. That's very different than making a finding of a race-based reason. Okay. Make your last point. Okay. And the last point I just wanted to make is, again, going back to what Judge Kleinfeld said, on the substance procedure, the question of substance procedure for choice of law purposes, the analysis about is it related to in-court procedures is much closer to the federal Erie question than the state separation of powers question that was at issue in the Native Village case. Is that all over whether it's right or not because of what the Supreme Court said in Alaska? Well, again, it is with respect to federal law. The reason that the Supreme Court said that is because it's not connected to the conduct of the litigation. That's the same analysis that we're asking for choice of law purposes under the restatement. That is not the analysis that the Alaska Supreme Court followed in the Native Village case. They said, well, this is more closely related to the concerns that led to the establishment of the judicial rulemaking power than to matters of public policy. That's 156p3rd at 397. They were taking this much more in gross. This is the kind of thing that belongs to us as opposed to the legislature. That's very different than should attorneys' fees be awarded in the case governed by the substantive law of another jurisdiction. And with respect, we would propose that Alaska, which follows the restatement, would follow the Erie analysis, which is much closer and puts this on the substantive side of the line. Thank you. I see I've finished my time. Yes. Thank you both for your argument. We're both very well prepared and very articulate. We always appreciate good argument. This matter will stand submitted, and this court will be in recess until Wednesday, July 27th.
judges: B Fletcher, Kleinfeld, Callahan, Cjj